UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LATOSHA NICHOLE BYRD,

    Plaintiff,

v.                                        Case No. 1:12-cv-1228
                                            Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                  /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on September 4, 1976 (AR 176).[1] She alleged a disability onset date of October 1, 2007 (AR 176). Plaintiff completed a GED and had previous employment as a telemarketer, scheduler, parking attendant, general laborer, driver, cook's assistant, cashier, baker's helper and day care provider (AR 183, 187). Plaintiff identified her disabling conditions as sarcoidosis, which limits her because she is not able to work in a dusty or humid environment and she cannot "do a lot of walking" or use stairs (AR 182). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on March 4, 2011 (AR 12-19). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 1, 2007 and that she met the insured status requirements under the Act through December 31, 2012 (AR 14). Second, the ALJ found that plaintiff had a severe impairment of sarcoidosis (AR 14). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15).

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that involves lifting up to 20 pounds occasionally; lifting/carrying up to 10 pounds frequently; standing/walking for 6 hours of an 8-hour workday and sitting up to 6 hours of an 8-hour workday, with normal breaks; occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; she must avoid concentrated exposure to extremes of cold, heat, humidity and fumes, odors, dust, gases, and poorly ventilated [sic] (SSR 96-8p).

(AR 15).

At the fourth step, the ALJ also found that plaintiff's residual functional capacity (RFC) would not be preclude plaintiff from performing her past relevant work as a cashier and baker's helper as she performed those jobs (AR 18). Despite having determined that plaintiff was not disabled, the ALJ continued to the fifth step of the sequential evaluation, where he found that plaintiff could perform other jobs in the national economy (AR 18-19). Specifically, plaintiff could perform the following jobs at the light exertional level "in the region where claimant lives": counter

clerk (14,900 jobs); general office clerk (5,000 jobs); and host/hostess (17,300 jobs) (AR 19).[2] Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2007 (the alleged onset date) through March 4, 2011 (the date of the decision) (AR 19).

## III. ANALYSIS

Plaintiff raised two issues on appeal:

> **A. The ALJ's conduct was flagrantly improper and indicated a bias against the plaintiff or an inability to properly conduct himself which rises to the level of reversible error.**

Plaintiff contends that the ALJ was biased against her and engaged in an improper line of questioning. Early on in the administrative hearing, after plaintiff had testified regarding her breathing difficulties and diagnosis of sarcoidosis, plaintiff's counsel identified the sarcoidosis as "probably the single issue here," and that "this is pretty much a lung case" (AR 30). In response, the ALJ stated that he should address "a question about obesity" (AR 30). After the ALJ had questioned plaintiff, her counsel asked her a number of questions regarding her breathing problems and treatment with a pulmonologist, Dr. Lovy at the Wege Center (AR 48-55). Then the ALJ questioned plaintiff regarding records received from the Wege Center through March of 2010 (AR 56).

> Q  Three follow-up items, ma'am. One is the WEGI center [sic] here, some of the most recent records I have through March of 2010 show that in the last visit and I think the one before that, I don't recall, your complaints were really not regarding your breathing. It was you were having some pain during sexual intercourse. Do you recall that?

---

[2] While record reflects that plaintiff lives in Grand Rapids, Michigan (AR 1), the ALJ did not identify whether the "region" under consideration was the City of Grand Rapids, Kent County, the lower peninsula of Michigan or the state of Michigan.

5

> A   No, but I do see -- I see --
>
> Q   Your chief complaint was that you were here for an annual physical exam with a complaint of pain with intercourse.
>
> A   I have two doctors at the WEGI center [sic].
>
> Q   Okay.
>
> A   And I also have an issue with ovary -- cysts on my ovaries and fibroid tumors.
>
> Q   Okay.
>
> A   So that's another whole reason why I see another doctor at the WEGI center [sic] same office. So maybe that's why you got the --
>
> Q   Is it Dr. McGhee?
>
> A   Yes.
>
> Q   Okay. So she sees you -- Kania McGhee?
>
> A   Yes.
>
> Q   She sees you for the sexual intercourse kind of complaints?
>
> A   Really she sees me for the fibroids, cysts and tumors--
>
> Q   Okay.
>
> A   -- on my ovaries.
>
> Q   You're not claiming that prevents you from work at all?
>
> A   No.

(AR 56-57).

Later in the hearing, when plaintiff's counsel discussed obtaining medical records, the ALJ made the following statement:

> ALJ   Well, what I'd like you to do is if you get them and you think that they're something I ought to see, to get them to me as soon as possible. I do wonder, apparently Ms. Byrd says that there's a couple of different folks she's seeing there and some of them, the ones regarding the sexual intercourse problems I probably don't need to see that. I don't think that she would -- I don't think it has anything to do with her work. She doesn't either apparently. But if she has other ones regarding the breathing problems, then --

(AR 67). Finally, in addressing plaintiff's credibility, the ALJ's decision made a brief reference to her gynecological problems, "[i]n addition, the medical records indicate through February 11, 2010 that she continues to attempt pregnancy despite dyspareunia" (AR 17).

Hearing officers are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1981). A party can rebut this presumption by a showing of conflict of interest or other specific reason for disqualification, but the burden of establishing a disqualifying interest is upon the person making the contention. *Id. See Davis v. Chater*, No. 95-2235, 1996 WL 732298 at * 4 (6th Cir. Dec. 19, 1996); *NLRB v. Ohio New & Rebuilt Parts, Inc.*, 760 F.2d 1443, 1451 (6th Cir. 1985). Here, plaintiff looks to the court's opinion in *Fulwood v. Heckler*, 595 F. Supp. 540 (D.C.D.C. 1984), for the proposition that ALJ's misconduct can be sufficient to require the reversal of an ALJ decision. For example, in *Fulwood*, the court found that "[a] review of the transcript of the hearing before the ALJ in this case, reveals that the ALJ questioned Plaintiff in a brusque, bullying manner, answered questions for him when the answer did not come quickly enough, drew conclusions unwarranted by Plaintiff's actual answers, and interrupted questions put by Plaintiff's attorney." *Fulwood*, 594 F. Supp. at 546.

Plaintiff does not contend that *Fulwood* is factually similar to her situation, but looks to *Fulwood* as authority to support her request for reversal of the ALJ's decision based upon the ALJ's impropriety. Defendant contends that the ALJ's questions were an attempt to determine why

7

her recent medical records did not involve treatment for sarcoidosis as part of the ALJ's review of all of the evidence. Defendant's Brief at pp. 4-8. The Court concludes that the ALJ's line of questioning was little more than an attempt to clarify which doctors plaintiff saw at the Wege Center for which problems. Even if the questions could have been phrased differently, they were not so improper as to demonstrate bias or require reversal. In this regard, the Court is guided by a case in which the ALJ engaged in conduct which was arguably more egregious than the conduct in the present case, yet considered insufficient to warrant a reversal:

> Claimant alleges two areas in particular where the ALJ showed unusual bias against him. The ALJ, who Claimant references as an ordained minister, questioned Claimant's abusing of marijuana when nothing in the record indicated Claimant had ever done so or been medically determined to have engaged in such conduct. The ALJ also on two occasions in his decision repeated that among Claimant's activities of daily living was the statement that Claimant "spend (sic) a lot of time with his girlfriend having sex." (Tr. 9, 11). This Court agrees with Claimant that the repeated reference to this activity is somewhat curious and of dubious relevance. Moreover, the ALJ's questioning as to Claimant's marijuana use when the same was not an issue in the case demonstrates questionable judgment and a certain degree of unwarranted judicial paternalism. The conduct does not, however, necessarily demonstrate that the ALJ is biased against this Claimant and does not alone warrant reversal.

*Outcalt v. Astrue*, No. CIV-10-422-FH, 2013 WL 1213092 at *3-4 (Report and Recommendation) (E.D. Okla. Feb. 28, 2013), adopted 2013 WL 1213089 (Order) (March 25, 2013). Nor did the ALJ's inquiries in this instance, standing alone, warrant reversal. Plaintiff's claim of error will be denied.

### B. The ALJ did not have substantial evidence to support his credibility findings.

Plaintiff contends that the ALJ's credibility determination was so improper as to rise to the level of reversible error. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v.*

8

*Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ evaluated plaintiff's credibility as follows:

> While there is no doubt that claimant experiences some problems as a result of sarcoidosis, her statements concerning her impairment and its impact on her ability to work are not entirely credible in light of the degree of medical treatment required. She has not returned to see Dr. Lovy since November 2008. When she was seen by his partner, Paul Harris, D.O., in December 2008, she reported the same coughing symptoms with post nasal drip returned after stopping the steroids prescribed by Dr. Lovy (Exhibit 14F, page 14). Dr. Lovy indicates in November 2008 that claimant had not been very compliant with taking Prednisone and she had admitted to him that she continued smoking. Dr. Lovy notes that a repeat CT showed pulmonary/interstitial changes that were stable and not increasing, but that they were not decreasing either (Exhibit 14F, page 16).
>
> Claimant testified she continued smoking until November 2009 when she quit. Dr. Hampton noted claimant's sarcoidosis is controlled with medication in

9

>February 2010 (Exhibit 13F, page 1), which shows a waning of the sarcoidosis despite not returning to see Dr. Lovy since November 2008. The evidence does not show treating physicians indicating significant functional restrictions and her activities of daily living include the ability to perform personal care; ability to pay bills, watch TV, visit with family members; and attend doctor appointments. In addition, the medical records indicate through February 11, 2010 that she continues to attempt pregnancy despite dyspareunia. Dr. Lovy noted she was non-compliant with medication and had admitted to continued smoking. Further, she admitted at the hearing to receiving unemployment compensation after having denied it and only after being advised the information was in the record. After considering all the evidence of record, I find claimant's statements regarding the effect of her impairments upon her ability to work are not wholly credible (SSR 96-7p).

(AR 17).

Plaintiff contends that the ALJ's credibility determination placed too much emphasis on finding that she misrepresented having received a check for $113.00 of unemployment benefits after 2007 and that she did not quit smoking until 2009. As an initial matter, it appears that the ALJ referenced the unemployment benefits check as an example of plaintiff's lack of candor. A review of the hearing transcript reflects that the ALJ, plaintiff and plaintiff's counsel engaged in a rather lengthy discussion regarding plaintiff's employment record and income. Initially, the ALJ asked plaintiff if she applied for unemployment benefits since 2007, which she replied "No, sir" (AR 33). After reviewing plaintiff's past employment, including her self-employment as a child care provider, the ALJ noted that plaintiff had unemployment earnings in 2008 (AR 44). Then, when the ALJ asked plaintiff a second time if she applied for unemployment after 2007, plaintiff stated "Yes" (AR 44-45). Plaintiff's counsel noted that it was for only $113.00 and the ALJ questioned the amount, stating "[a] lot of people come in here with more unemployment earnings than you had" (AR 45). Plaintiff seemed confused, noting that she could not collect unemployment because she was self-employed (AR 45). Then, the ALJ inquired into plaintiff's apparently unreported income for child care in 2007, which she stated was "like $87 a week" lasting "just a couple of months" (AR 45).

10

Plaintiff later testified her belief that the $113.00 check was for an old claim that had originally been denied (AR 46-47). Given this record, it is unclear whether plaintiff applied for unemployment benefits after 2007 (as the ALJ originally asked) or if the check (which the ALJ himself felt was a small amount) was payment for a disputed claim made before 2007. Based on this record, the Court agrees with plaintiff that her statements regarding the receipt of unemployment benefits was not a critical issue with respect to credibility. However, given the other considerations listed by the ALJ, the Court does not find this to be a "compelling reason" to disturb the ALJ's credibility determination.

Plaintiff also contends that the ALJ improperly referred to her habit of smoking. Unlike the unemployment benefits, plaintiff's smoking is directly related to her medical condition which involved a lung condition. The ALJ's decision does not specifically state that plaintiff was being non-compliant with Dr. Lovy's instructions when she admitted that she was still smoking in November 2008. However, back in July 2008, Dr. Lovy and plaintiff "discussed at length the importance of smoking cessation" (AR 421-22). The fact that plaintiff continued to smoke until November 2009 reflects non-compliance with her doctor's instructions, and would suggest that her condition is not as serious as alleged. *See Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir. 1988) ("The Social Security Act did not repeal the principle of individual responsibility. Each of us faces a myriad of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege -- but if he is not truly disabled, he has no right to require those who pay Social Security taxes to help underwrite the cost of his ride."). *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011(8th Cir. 2005) (diabetic claimant's non-compliance with dietary regime and

11

medication is inconsistent with an allegation of disability). The ALJ could properly address theis issue in evaluating plaintiff's credibility. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: March 20, 2014                    /s/ Hugh W. Brenneman, Jr.
                                         HUGH W. BRENNEMAN, JR.
                                         United States Magistrate Judge